UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALLSTATE INSURANCE COMPANY and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Plaintiffs,

vs.                                                                      Case No. 11-11988

AWAN & ASSOCIATES P.C., PAIN                        HON. AVERN COHN
MANAGEMENT & REHAB CENTERS P.C.,
VASA-RX, INC, d/b/a/ ALL CARE PHARMACY,
KASIM, LTD, d/b/a/ COMPREHENSIVE
PHYSICAL THERAPY, and MUZAFFAR
AWAN, an individual, jointly and severally,

      Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING**
**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Doc. 31)[1]**

### I. INTRODUCTION

This is a fraud case.  Plaintiffs are insurance company providers of first party

medical benefits for their insured under the Michigan No-Fault Auto Act.  Defendants

provided the medical benefits plaintiffs are challenging.  As a consequence of the nature

of the case, discovery requests by plaintiffs were extensive and detailed.

As will be discussed, plaintiffs filed a motion for default judgment against defendants

as a sanction for defendants' failure to comply with discovery requests.  (Doc. 31).  On

June 20, 2012, the Court held a hearing on the motion.  The Court took the matter under

_____

[1] Upon review of the papers, the Court deems this matter appropriate for decision
without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

advisement and subsequently held two status conferences, the first on June 27, 2012 and the second on September 10, 2012.

Due to defendants' deficient responses to plaintiffs' discovery requests, on October 18, 2012, the Court referred the motion and the outstanding discovery requests to a magistrate judge (MJ) for a report and recommendation (MJRR). *See* (Doc. 47).[2] The MJ recommends that plaintiffs' motion for default judgment be granted. (Doc. 51). Defendants filed timely objections to the MJRR. (Doc. 53).[3] Plaintiffs filed a response. (Doc. 54). For the reasons that follow, the Court will ADOPT the MJRR and GRANT plaintiffs' motion for default judgment.

## II. BACKGROUND

As the parties have not objected to the MJ's recitation of the facts, the Court adopts that portion of the MJRR as if fully set forth herein. *See* (Doc. 51 at 1-2). The material facts follow.

### A. The Lawsuit

On May 5, 2011, plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company (collectively plaintiffs) filed this case against defendants Muzzafer Awan, Muzzafar Awan-R.A. Pain Management & Rehab Center PC, Vinay Shah, and Ramana Kasim (collectively defendants), claiming that defendants fabricated electrodiagnositc studies and other services in order to allow third parties to fraudulently

---

[2] The matter was originally referred to a MJ on September 21, 2012, but due to a conflict, the case was later referred to a different MJ.  *See* (Docs. 44, 46

[3] Defendants' objections were filed on February 8, 2013.  (Doc. 52).  Defendants later filed corrected objections on February 13, 2013.  (Doc. 53).

obtain benefits from plaintiffs under the Michigan No-Fault Auto Act.  (Doc. 1).  Plaintiffs

claim that defendants' fraud has resulted in over $1.5 million being paid on fraudulent

claims.  (*Id.* at 6).  Plaintiffs' complaint is in eight counts, phrased as follows:

Count I:      Fraud/Silent Fraud;
Count II:     Insurance Fraud;
Count III:    Claim to Pierce the Corporate Veil;
Count IV:    Violation of the Public Health Code;
Count V:     Payment Under Mistake of Fact;
Count VI:    Violation of the No-Fault Act, M.C.L.A. §§ 500.3100 et seq.;
Count VII:   Unjust Enrichment; and
Count VIII:  Civil RICO;

(*Id.* at 8-18).

On June 13, 2011, defendants filed a motion to dismiss the complaint, arguing that

plaintiffs lacked standing, failed to state fraud with particularity, failed to state a RICO claim,

and that plaintiffs' claims were barred by the statute of limitations.  (Doc. 8).  The Court held

a hearing on October 5, 2011.  The motion was granted in part and denied in part.  (Doc.

20).  Counts II (Insurance Fraud), III (Claim to Pierce the Corporate Veil), and IV (Violation

of the Public Health Code), were dismissed.  (*Id.*).

Also on October 5, 2011, the parties filed a Rule 26(f) Joint Discovery Plan, which

set June 29, 2012 as the cutoff date for completing discovery.  (Doc. 18 at 1).  The Court

entered a Pretrial and Scheduling Order which set, among other things, June 29, 2012 as

the cutoff date for completing discovery.  (Doc. 19 at 1).

## B. Plaintiffs' Request for Clerk's Entry of Default

On October 28, 2011, plaintiffs requested the Clerk of the Court to enter a default

judgment against all defendants based on their failure to answer or otherwise defend

plaintiffs' complaint more than twenty days after the Court ruled on defendants' motion to

dismiss.  (Doc. 22).  On October 31, 2011, plaintiffs withdrew the request, and defendants filed an answer to the complaint.  (Docs. 23, 24).

### C. Plaintiffs' Motion to Compel

On November 17, 2011, plaintiffs filed a motion to compel discovery.  (Doc. 25). Plaintiffs sought to compel answers to the "First Set of Interrogatories" and "Request for Production of Documents," which were served on defendants on September 8 and 19, 2011.  (*Id.* at 1-2).  The Court held a telephone conference with the parties on December 1, 2011 and ordered defendants to respond to plaintiffs' discovery requests within 30 days of the conference.  On January 2, 2012, defendants provided plaintiffs with objections and written answers to plaintiffs' discovery requests, but failed to produce any of the requested documents.

On February 22, 2012, the Court held a status conference with the parties regarding the outstanding discovery.  Defendants' counsel represented that his paralegal responsible for compiling the discovery requests fell ill with cancer and that the discovery would be forthcoming.  Thus, the Court extended the period for discovery through October 2, 2012. (Doc. 30).  By this date, defendants provided plaintiffs with numerous documents, few of which were labeled, and none of the documents correlated to any specific request for production.

### D. Plaintiffs' Motion for Default Judgment

On April 20, 2012, plaintiffs filed a motion for default judgment and/or for other sanctions against all defendants for repeated discovery violations.  (Doc. 31).  Plaintiffs claimed that defendants failed to comply with the following written discovery requests:

Plaintiffs' First Set of Interrogatories and Request for

4

Production of Documents;

Plaintiffs' Second Request for Production of Documents; and

Plaintiffs' First Set of Requests to Admit, Third Request to Produce and Second Interrogatories.

(*Id.* at 2).

On June 20, 2012, the Court held a hearing on plaintiffs' motion for default judgment. Plaintiffs' counsel noted several problems with the information defendants produced as of the date of the hearing:

> Ms. Hewson: . . . We have – we were provided with pages of documents, none of which or a few of which were labeled. Not all of them are Bates stamped. None of them are correlated to any specific request for production. Out of 8,000 pages of documents, I don't even have claimants all in the same order. So it's not like 1 through 11 is claimant number. I have over 40 people who aren't even insured in these documents. I have redacted pages, and I have no privilege log. I have spent personally over eight hours. I have 23 hours of paralegal time in this, and I still haven't been through all of the documents.

The Court informed the parties that it would not enter a default judgement until it had the opportunity to see the documents that were missing. However, by way of example, plaintiffs' counsel directed the Court to a specific request for production that defendants failed to comply with. The following colloquy took place:

> Ms. Hewson: I can give you a quick and simple example, Your Honor.
>
> The Court: Go ahead.

5

Ms. Hewson:        Interrogatory Number 14.

                        . . . .

The Court:         "Please provide the following for the
                   software used for billing purposes."  Is
                   that it?

Ms. Hewson:        That's it.  Yes, Sir.

The Court:         All right.  So I have to go then to his
                   response, right?

Ms. Hewson:        Yes, sir.  That is attached to my motion.

                        . . . .

The Court:         It's a completely inadequate answer, sir.
                   It's a legitimate inquiry, and your answer
                   is falderal.

Mr. Romanzi:       Off the top of my head, I don't recall what
                   the answer was.

The Court:         The answer is, "Provide the following for
                   the software used for billing purposes for
                   Defendant Awan & Associates, P.C.: (a)
                   name of the software, (b) the operating
                   system on the computers in the office
                   which uses this software, and (c) the
                   name and address of each person who
                   provides input to general bills."

                   Answer: "The defendant objects to the
                   production of financial records for
                   numerous reasons, including, but not
                   limited to, the information" – no, no, no,
                   no.  We'll go through them interrogatory
                   by interrogatory, and you are going to –
                   that's the only way I can do it.

                   You take a look.  She's given me an
                   example.  Your answer is completely
                   inadequate.

6

| | |
|---|---|
| Mr. Romanzi: | I will look at them and I will do my best to comply with – |
| The Court: | No, you won't do your best.  You will do it.  Okay. |

Subsequent to the hearing, the Court held two status conferences and, along with counsel for both parties, parsed through the discovery dispute request by request.  The Court instructed defendants' counsel which specific answers were inadequate, and the documents that required production.  The Court also reduced some of plaintiffs' discovery requests that were too broad.  The first status conference took place on June 27, 2012. After this conference, the Court extended the discovery cutoff date through January 7, 2013.  (Doc. 39).  The second status conference took place on September 10, 2012.

### E. September 17, 2012 Letter

In a letter dated September 17, 2012, plaintiffs' counsel informed the Court of specific discovery areas which defendants failed to address, despite the Court's instruction at the status conferences.  (Doc. 47-1).  These included numerous deficiencies in defendants' responses, ranging from failure to fully answer interrogatory questions, to failure to produce certain documents.  Plaintiffs' counsel detailed the specific instruction given by the Court at the status conferences as to each area of non-compliance, and defendants' continued failure to provide the discovery.

After receiving this letter, the matter was referred to a magistrate judge (MJ).  (Doc. 47).  In the Order of Reference, the Court stated, "As the Court views the record defendants are deficient in their responses to [plaintiffs' discovery] requests.  The interests of justice are best served by reference of outstanding discovery requests (See Exhibit A attached)" to a MJ.  (*Id.*).

7

**F. The MJRR**

On November 14, 2012, the MJ held a telephone conference with counsel for both parties to address the outstanding discovery issues. The MJ directed defendants to respond, by November 28, 2012, to the September 17, 2012 letter attached to the order of reference. Defendants did not file a response, nor did they request an extension from the MJ. Thus, due to the continued failure by defendants to comply with the Court's instruction, and defendants' failure to address the September 17, 2012 letter, the MJRR recommends granting plaintiffs' motion for default judgment as a discovery sanction.

**III. LEGAL STANDARD**

A district court must conduct a de novo review of the parts of a MJRR to which a party objects. 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* The requirement that district judges with life tenure conduct a de novo review and be the final arbiters of matters referred to a magistrate judge is jurisdictional. *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985); *Flournoy v. Marshall*, 842 F.2d 875, 878 (6th Cir. 1987).

**IV. DISCUSSION**

Defendants object to the MJRR and ask the Court to reject it for two reasons: (1) the MJ improperly weighed the totality of the circumstances; and (2) a default judgment is an extreme sanction not warranted in this case. The Court disagrees and will overrule defendants' objections. The reasons follow.

**A.**

8

As the Sixth Circuit has recognized, "[a] district court may sanction parties who fail to comply with discovery orders in a variety of ways, including dismissal of their lawsuit or entry of default judgment against them." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (citing Fed. R. Civ. P. 37(b)(2)(C)).  A district court's entry of a default judgment as a sanction for discovery violations is reviewed under an abuse of discretion standard.  *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) (citing *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997)).

"A district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment." *Id.* (citing Fed. R. Civ. P. 72(b)(2)(B)).  Four factors are considered when determining whether a default judgment is an appropriate sanction for discovery violations: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (citing *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)); *see also Abbe*, 916 F.2d at 1073 (discussing factors to consider whether dismissal or default judgment is appropriate sanction for discovery violations); *Mack*, 270 F. App'x at 376 (same).

When misconduct is solely the fault of the attorney our circuit "hesitates, but is not entirely unwilling, to approve a default judgment. . . ." *Mack*, 270 F. App'x at 376 (citing *Harmon*, 110 F.3d at 367-68).  Indeed, the normal factors "have been applied more stringently in cases where the . . . attorney's conduct is responsible for the dismissal." *Id.*

9

Nevertheless, district courts have discretion to enter default judgments solely on the basis of counsel's conduct. *Harmon*, 110 F.3d at 368 ("We have never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect.") (citations omitted); *see also Universal Health Grp.*, 703 F.3d 953 (dismissing complaint as sanction for counsel's discovery violations).

**B.**

The Court, considering the above factors, agrees with the MJ that a default judgment is the appropriate sanction in this case.

Considering the first two factors, the MJ concluded that "[d]efendants' failure to follow orders or offer any written explanation regarding their dilatory conduct is plainly willful, and "the prejudice to plaintiff[s] is equally clear." (Doc. 51 at 5). The MJ is correct.

There is no question that plaintiffs are prejudiced by defendants' failure to respond to relevant discovery inquiries. *See, e.g., Mack*, 270 F. App'x at 376 ("[P]laintiffs were prejudiced because they never received information critical to their case and because they had to waste significant time and money dealing with the defendant's abuses.").

In addition, the discovery abuses were willful and defendants are at fault. As the Sixth Circuit has explained, repeated noncompliance with court-sanctioned discovery requests suggests willfulness, bad faith, or fault. *Abbe*, 916 F.2d at 1079. To date, defendants have defied the specific instructions of this Court, as well as the instructions of the MJ. Most recently, in the face of a motion for default judgment against them, defendants did not respond to plaintiffs' September 17, 2012 letter,[4] despite the MJ's

---

[4] The letter details, item by item, the discovery that is outstanding.

explicit direction to do so by November 28, 2012.

Defendants' counsel says that his failure to answer the September 17 letter was not willful because he asked plaintiffs' counsel for an extension. *See* (Doc. 53-11). On November 29, 2012, one day after the response was due, defendants' counsel sent plaintiffs' counsel an email stating, in pertinent part:

> I am requesting that you grant me an extension until Monday to respond to the 9/17/12 letter regarding discovery issues in the Awan Matter. I have had several personal matters which have arisen and consumed my ability to devote an appropriate time to this matter.

(Doc. 53-11 at 1). Plaintiffs' counsel promptly responded to the request:

> Your response was due yesterday. Additionally, I do not have the authority to grant you an extension in this matter and I would not be able to talk to my client until next week. As such, I'm afraid I cannot grant your request.

(Doc. 53-11 at 2). Defendants' counsel never asked the MJ or the Court for an extension, nor has he, to date, filed a response to the September 17 letter.

Defendants' counsel admits that personal matters have deprived him of the ability to dedicate the necessary time to this case. In the earlier stages of this case, defendants' counsel explained that a paralegal in his office who was responsible for discovery in this case fell ill with cancer. This hindered defendants' counsel's ability to comply with the Court's instructions, and the Court accommodated the situation by extending the discovery period. Now, in the objections to the MJRR, defendants' counsel explains that he is personally going through a contentious divorce. This, he says, has also affected his ability to timely comply with discovery orders. The Court, like the MJ, has no trouble finding that the defendants' noncompliance with discovery orders is willful. Defendants' counsel cannot

11

rely on the fact that personal matters have caused him to neglect this case.[5]

Further, after plaintiffs filed this motion, defendants were well-aware that a default judgment could be entered against them.  Notwithstanding, defendants continued to ignore the Court and the MJ's orders.  Thus, the MJ is correct in concluding that "[a]ny claim that defendants were not on notice that the default judgment might be entered against them is specious."  (Doc. 51 at 7).

Finally, the Court agrees with the MJ that "no lesser sanction is warranted."  (*Id.*). From the very beginning of this case, when plaintiffs filed a motion to compel, the Court warned defendants that answers to discovery requests were wholly inadequate.  Plaintiffs' motion to compel was filed seventeen months ago.  The Court has, on multiple occasions, directed defendants to the specific deficiencies in the answers to the discovery requests. The discovery deadline has been amended on multiple occasions to accommodate defendants.  The MJ gave defendants another chance to reply to plaintiffs' September 17 letter; to date, defendants have ignored the MJ's order.  Thus, defendants' responses to relevant discovery requests remain wholly inadequate.  The MJ was correct in concluding that "[d]efendants have already had multiple opportunities to correct their discovery failures and comply with the orders of the Court."  (Doc. 51 at 7).  The MJ saw "no reason to allow defendants yet another opportunity to disregard their discovery obligations or ignore another order of the Court."  (*Id.*).  The Court sees no reason to do so either.

---

[5] Defendants' counsel is not unfamiliar with the consequences of neglecting a client's case.  Recently, another judge in this district dismissed a complaint, as a sanction for failing to comply with discovery, in which defendants' counsel represented the plaintiff in that case.  *Universal Health Grp. v. Allstate Ins. Co.*, No. 09-12524, 2012 WL 488709 (Feb. 15, 2012), *aff'd* 703 F.3d 953 (6th Cir. 2013).  Defendants' counsel has continued the same practices.

2:11-cv-11988-AC-MJH   Doc # 56   Filed 04/03/13   Pg 13 of 14   Pg ID 1588

## C.

Defendants say that this case is not as egregious as other cases where a default judgement has been entered as a sanction for discovery violations.  Defendants are mistaken.  *See, e.g. Abbe*, 916 F.2d at 1079 (affirming district court's entry of default judgment as sanction for repeated failures to comply with court-sanctioned discovery requests); *Harmon*, 110 F.3d at 368 (dismissing complaint for failing to comply with discovery orders for over one-year).  Each of the above stated factors weighs in favor of granting a default judgment against defendants in this case.  Defendants' failure to comply with straightforward, relevant discovery requests throughout this entire case has frustrated plaintiffs' case and led to a waste of time and money.   As the Sixth Circuit stated in *Harmon*,

> Harmon failed to respond to the amicable requests of CSXT's counsel, he failed to respond to CSXT's motion to compel, and he failed to comply with the district court's November 2, 1995, order.  To make matters worse, Harmon then failed to respond to the motion to dismiss, even after the district court was gracious enough to grant him an extension of time.  This record is more than adequate to establish that Harmon's counsel was stubbornly disobedient and willfully contemptuous.  It is, in short, a clear record of delay and contumacious conduct.

*Harmon*, 110 F.3d at 368.  Like *Harmon*, defendants' counsel's actions evidence a clear record of delay and contumacious conduct.  A default judgment is the appropriate remedy in this case.[4]

## V. CONCLUSION

---

[4] Defendants also say that a sanction is inappropriate because plaintiffs' claim has no merit.  The Court has already ruled on defendants' motion to dismiss.  *See* (Doc. 20).  This is not a proper objection to the MJRR.

13

For the above reasons, including the reasons stated in the MJRR, the MJRR is ADOPTED and plaintiff's motion for default judgment is GRANTED.  Judgment will be entered against defendants on the liability portion of the case.  The case will proceed to trial on the issue of damages.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  April 3, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 3, 2013, by electronic and/or ordinary mail.


 S/Sakne Chami
Case Manager, (313) 234-5160